## No. 4809.

THOMAS LYNNE *v.* CITY OF NEW ORLEANS, and E. T. MANNING *v.* the same.    (Consolidated.)

The city of New Orleans, like any other plaintiff, has the right to control its own judgments and *fieri facias*, and had the right to cause those issued in these cases to be set aside, but by so doing, it could not deprive the clerk, who had properly performed his duties, of his legitimate costs.

The objection made to his being paid, because, instead of turning over the *fieri facias* to the city attorney, as directed, he gave them to the sheriff, is not well founded.

The clerk, at the time, was surrounded by a hostile body of men and driven by force out of the office to which he was by law entitled; under these circumstances, the court does not consider that, because the *fieri facias* were sent to the sheriff's office at such a moment of tumult, for safe keeping, the clerk deprived himself of the right to claim the legal price of his work.

Where it was contended that, in a former proceeding before this court, while acting as clerk of the Eighth District Court, Manning was punished in this court for a contempt of its authority, and therefore that he had been recognized as clerk of said Eighth District Court, from which it follows that, having been recognized then, he must be recognized now:

Held—That this court takes cases as they are found and decides them upon the pleadings by which they are presented. In the proceeding referred to, Manning's right to office was not contested; in this case it is expressly put at issue. This court is therefore forced to declare whether he was, or not, entitled to the office when he took possession of it, and when the services for which he claims payment were made.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins,* J.    *Frank N. Butler,* for Manning, appellant. *J. W. Thomas,* for Lynne, appellee.    *H. H. Walsh,* assistant city attorney, for the city of New Orleans.

MORGAN, J.  Plaintiff alleges that on the twenty-sixth October, 1872, the city of New Orleans, through its proper officers, filed in the late Eighth District Court, of which court he was clerk, various suits against delinquent taxpayers, numbering 5612 in all, which were entered that day on the docket of the said court by himself and his deputies, and numbered from 7907 to 13,517; that on the fifth November following, the city, through its attorney, moved for judgments by default in 5350 of said suits, which were allowed; that on the eleventh of the same month they were confirmed and made final; and that on the fifteenth of the same month *fieri facias* issued thereunder.

He avers that his compensation for the services thus rendered by him is fixed by law at two dollars for each of said suits, which sum he says the city refuses to pay him. He prays judgment for $10,700, with legal interest from judicial demand.

The city specially denies having moved for a default in the 5350 cases referred to by plaintiff, averring that on the fifth November exceptions were pending in 993 of said suits, and that the city was therefore without the legal right to a default therein. She specially denies the plaintiff's right to recover compensation for the services by him alleged to have been rendered in each of the 5350 cases for which he claims payment, because no *fieri facias* had been lawfully issued by plaintiff in any one of said suits prior to the expiration of the term of his office as clerk, and that, for want thereof, plaintiff is not entitled to recover any sum whatever; that if *fieri facias* were issued by him they were improvidently and unlawfully issued in express violation of the instructions and orders of the city's attorney.

The city, however, admits that certain proceedings against sundry tax delinquents were instituted in the Eighth District Court, and admits that in a few of said suits she is liable to pay the costs and fees prescribed by law, but says that the fees for which she admits a liability, are not alone claimed by plaintiff; that they are also claimed by E. T. Manning and John Burke, who deny plaintiff's right thereto, and that, as it is impossible for her to determine the party to whom the amount due and owing by her shall be paid, she prays that Manning and Burke be made parties and cited to appear and defend the suit; that the court fix the entire amount of respondents' indebtedness, and determine to whom it shall be paid.

Then Manning instituted his suit. He avers that he was duly elected clerk of the Eighth District Court and installed in the office thereof on the twenty-first November, 1872; that in the discharge of his duties, and in obedience to special instructions from the law officers of the city, he did certain work for the city in connection with a large number of suits instituted in the Eighth District Court against sundry tax delinquents, for which services he is entitled to be paid by the city $6878 25, as he says will appear by reference to accounts A and B, which he annexes to and makes part of his petition. He asks judgment for $6878 25. The numbers in these accounts correspond with the numbers in the bill charged for by Lynne. We suppose there is no doubt about their being the same suits.

Neither the bill presented with the petition, nor the accounts A and B, show what the services rendered by Manning were, nor does he declare in what they consisted in his petition. His bill is in the following words: "City of New Orleans to Edward T. Manning, Dr. 1872,

4

December 9. To clerk's fees in 2755 city tax suits for the year 1872, as per list A, $2066 25. To clerk's fees in 4850 city tax suits for the year 1872, as per lists A and B, $4850, less $38 received on account, $6878 25." The accounts A and B give the number of the suit and the names of the defendants. The numbers include the Nos. 7907 and 13,517, alleged by Lynne to have been filed by him.

To this petition the city again admits that, in a few of the cases, she is liable for costs, but avers that they are claimed by Lynne and Burke, and prays for a decision which will protect her. Burke, after default, disclaims any right, title or interest to the fees claimed by Lynne and Manning, except such as the law allows him for filing documents in order to transfer the same from the Eighth District Court to the Superior District Court.

Lynne, answering Manning's petition, denies that he was regularly and lawfully installed or inducted into the office of clerk of the Eighth District Court, or that he was ever lawfully commissioned thereto. He avers that he (Lynne) was discharging the duties of clerk, to which office he had been appointed, on the twenty-sixth March, 1870; that he was discharging his duties as such until the twenty-first November, 1872, when he was forcibly ejected from said office by Manning and others, and thereby prevented from discharging his duties from that period until the office itself was abolished; that Manning, combining with others to wrongfully obtain possession of the office, procured and caused to be issued by Governor Warmoth a pretended commission of clerk, which commission was issued illegally and before his (Lynne's) term of office had expired, and before the votes of the parish of Orleans had been canvassed by the lawful board of commissioners. He therefore avers that Manning was never clerk of the Eighth District Court, *de jure*, and that he is not entitled as against him (Lynne) to claim any of the fees or emoluments thereunto appertaining. Upon these issues the parties went to trial.

There was judgment in favor of Lynne for $9742, and the claim of Manning was dismissed. Manning appeals. In this court the city, through its attorney, in the brief filed by him, says that she is only a stake holder, and desires only that such judgment may be rendered as will protect her against a double payment.

The first question to be determined is, whether any work was done by Lynne, and if so, whether it was done, as is charged in the answer, improvidently and unlawfully. The assistant city attorney, who says in his testimony, that he has special charge of that class of the city's business, being asked "who issued the writs of *fieri facias* from the Eighth District Court prior to the thirteenth December, 1872?" answered that "the writs were first improvidently issued by Mr. Lynne,

who was at that time clerk of the Eighth District Court, and after having been so issued by him, were countermanded and quashed by an order from the Eighth District Court on motion of myself as attorney for the city." And so in the record we find "on motion of H. H. Walsh, assistant city attorney and on suggesting to the court that Thomas Lynne, ex-clerk of the Eighth District Court, and Robert Lynne, ex-deputy clerk, in disobedience to a direct order from George S. Lacey, city attorney, have caused to be placed in the hands of C. S. Sauvinet, late sheriff of the parish of Orleans, 5618 writs of *fieri facias* in tax judgments, rendered in this honorable court, in favor of the city of New Orleans against sundry taxpayers for their taxes of 1871, that they were illegally and inadvertently issued; it is ordered that the said *fieri facias* be quashed and set aside, and the said Sauvinet be ordered to forthwith return them into court, at the costs of defendant."

This is a judicial admission that the work was done. Of course, the city, like any other plaintiff, has the right to control its own judgments and *fieri facias*, and she had the right to cause those issued in these cases to be set aside. But the question is whether she could, by so doing, deprive the clerk, who had properly performed his duties, of his legitimate costs; and the question reverts were the *fieri facias* issued "illegally, inadvertently and without authority," as is stated in the city's answer and in the motion upon which they were "quashed?"

On the ninth November, 1872, the city attorney addressed the following letter to Lynne: "Sir: As much confusion has arisen in the issuing of *fieri facias* in the city tax suits, before this office has made proper entries in reference thereto, and as the interests of the city require that such writs should not be precipitately issued, you are hereby directed to issue no *fieri facias* upon tax judgments unless specially directed so to do. Signed, George S. Lacey, city attorney."

This letter was handed to Lynne by the assistant city attorney, as appears from his certificate.

Then comes the following letter:

New Orleans, November 14, 1872. Thomas Lynne, Esq. Sir—As soon as the law will permit, you will proceed to make out the writs of *fieri facias* in all the tax judgments taken in the Eighth District Court, and turn the same over to this office to be receipted for and registered here; a due protection of the city's interest requires that no writs of *fieri facias* should be placed in the hands of the sheriff except through this office. Signed, George S. Lacey, city attorney.

These instructions clearly show that when Lynne issued the *fieri facias*, he was not acting illegally, inadvertently or without authority. He was acting under orders which he was bound to obey. The motion

to quash the *fieri facias* show that he had issued them   Under these circumstances, we think he is clearly entitled to the compensation for the work which he did.

There is an objection made to his being paid because, instead of turning over the *fieri facias* to the city attorney's office he gave them to the sheriff.   The reason he gives for this, found in the following letter, written to the city attorney when informed of the motion to quash the *fieri facias* is, we think, satisfactory:

"New Orleans, November twenty-three, 1872.   George S. Lacey, Esq., city attorney.   This morning's papers acquaint me of what was done in the Eighth District Court yesterday.   The *fieri facias* stated to have been sent to the sheriff were not sent to his office for execution.   They were sent there in packages by me for safe keeping, and until I could get an opportunity to convey them to your office in compliance with your order.   Had you been present at the time and seen the tumult and excitement, you would have advised the course I pursued. I may not deem it advisable to go to court to-day, and you would enable me to carry out the original intention if you send an order and cab for them at my expense.   Very respectfully, Robert Lynne."

He was surrounded by a hostile body of men, and driven by force out of the office to which he was by law entitled.

Under these circumstances, we do not consider that because the *fieri facias* were sent to the sheriff's office in such a moment of tumult, for safe keeping, that Lynne deprived himself of the right to claim the legal price of his work.   The city has not shown that she could not have obtained possession of these *fieri facias* on demand; it is not denied in any of the pleadings that the *fieri facias* were not made out in due form of law; it must have been a matter of indifference to the city who performed the mere clerical labor of making them out and issuing them; and there was never any necessity that we have been able to discover for having them quashed, merely that they might be made over again by some other person.   We think the judgment as to Lynne is correct.

Is Manning entitled to anything?   He says he did the work for which he charges, under authority derived from the following entries on the execution docket:

"Issue *fieri facias* in every city tax case wherein judgments have been signed for 1871, and wherein the amounts are not appealable, and wherein no exceptions have been filed."   November 30, 1872. Signed, H. H. Walsh, assistant city attorney.

And on the ninth December: "Issue *fieri facias*."   Signed by the same counsel.

It was under these instructions that he did the work for which he

now claims to be paid. The city has the right to make as many costs as it likes. The laborer, it is said, is worthy of his hire, and if Manning did the work under instructions, and was at the time he did it the lawful clerk of the Eighth District Court, he must be paid for it. ·

The question is, was he legally the clerk of that court?

In the record we find the following admissions :

"It is admitted that Mr. Lynne was *de facto* and *de jure* clerk of the Eighth District Court, on the twenty-first day of November, 1872, and that on that day, Mr. Manning, one of the plaintiffs in this case, took possession of the clerk's office of the Eighth District Court, with the assistance of certain persons claiming to be deputies of W. P. Harper, who claimed to be the civil sheriff of the parish of Orleans.

"It is admitted that, on that day, the Board of Returning Officers, constituted by law, had not proclaimed the result of the election in the parish of Orleans, and that Mr. Manning's commission, issued by Warmoth, was issued in anticipation, and before the result of the election had been legally ascertained as required by law.

"It is admitted that Lynne was ejected from the clerk's office of the Eighth District Court, and still claimed to be the clerk, up to and including the twelfth day of December, 1872, and that, during the period intervening between the twenty-first day of November, and the thirteenth day of December, 1872, when the act creating the Superior District Court went into operation, which act abolished the Eighth District Court, Mr. Lynne was prevented from occupying said office against his will.

" And it is further admitted that, at the time the Eighth District Court was abolished, thirteenth December, 1872, the Board of Returning Officers had not proclaimed the result of the election in the parish of Orleans, and that Mr. Manning had not been commissioned to that office by virtue of such return, and never was commissioned to that office.

"And it is still further admitted that, when the returns were proclaimed by the legal returning board, Mr. Manning was returned as elected to the office of clerk of the Eighth District Court, and this return was made three days subsequent to the abolition of the Eighth District Court."

These admissions, it seems to us, make it impossible for any court of justice to give him relief. He admits that the commission under which he pretended to act, was issued in anticipation and before the result of the election in virtue of which he claims the right to the commission had been legally ascertained; that Lynne was ejected from the office of the court of which he was *de facto* and *de jure* clerk; that the work was done between the twenty-first of November and the thirteenth of

December, and that during that time he (Lynne) was prevented from occupying the office against his will; that, when the Eighth District Court was abolished, the board of returning officers had not proclaimed the result of the election, and that no commission based upon such return (upon which return alone a commission could legally issue) ever was given to him. Finally, he admits that the returns of the election were only proclaimed three days after the court of which he had been elected clerk had been abolished. In other words, he admits that he strode into a public office and pushed the legal incumbent thereof from his stool; that he drove him out by force and kept him out against his will, without even having had a commission legally issued as an excuse for this bold usurpation.

In this country we profess to be governed by laws, and not by mobs. Parties claiming rights to office assert those rights, as other claimants do, through the courts; it is not permitted to them to take possession in despite of the legal rights of others, by force of arms. If they do, their tenure must necessarily be short, and their profit nothing. In a former proceeding before this court, while he was acting as clerk of the Eighth District Court, Manning was punished by us for a contempt of our authority. It is therefore contended that he has been recognized by us as clerk of that court, and that, having recognized him then, we must acknowledge him now. We take cases as we find them, and decide them upon the pleadings by which they are presented. In the proceeding referred to Manning's right to office was not, that we are aware of, contested. Here it is expressly put at issue. We are therefore forced to declare whether he was or was not entitled to the office, when he took possession of it and when the services for which he claims pay were rendered. We conclude that he was not, and therefore it follows that he can recover nothing.

In the case of Lynne v. The City, the judgment was in favor of Lynne. In the case of Manning v. The City, the judgment was in favor of the city. Both judgments are correct.

It is therefore, ordered, adjudged and decreed that the judgments of the district court in these consolidated cases be confirmed with costs.